## WASHINGTON COUNTY MUTUAL INSURANCE COMPANY *vs.* FRANCIS H. DAWES.

An auditor's report is competent evidence of facts stated in it, which are objected to before him as not admissible under the answer, if the answer, after the return of the report, and before trial. is amended by leave of court so as to meet the objection.

A failure to comply with terms imposed by the court upon the allowance of an amendment of pleadings, if not objected to at the trial, cannot be insisted on as an objection to the hearing upon a bill of exceptions.

In an action by a foreign mutual insurance company to recover an assessment upon a deposit note, if the plaintiffs, in proving a demand on the defendant for payment of the assessment, introduce evidence that the defendant refused to pay it because the plaintiffs' agent came to him in this commonwealth and induced him to insure by false representations as to the amount of premium, such evidence is competent to show that the contract was made within this commonwealth, and therefore void if the provisions of the Rev. Sts. *c.* 37, § 41, and *St.* 1847, *c.* 273, were not complied with.

The omission of an agent of a foreign mutual insurance company to comply with the provisions of the Rev. Sts. *c.* 37, § 41, and *St.* 1847, *c.* 273, before making a contract of insurance in this commonwealth, will prevent the maintenance of an action by the company on the deposit note, though the contract be the only one ever made here by that agent.

Under the Rev. Sts. *c.* 37, § 41, and *St.* 1847, *c.* 273, foreign mutual insurance companies are required to publish a statement of their affairs in a newspaper published in the county where their agent transacts the business of his agency, before he can make a valid contract of insurance.

After the introduction of an authenticated copy from the office of the treasurer of the Commonwealth of the statement filed there by a foreign insurance company, and satisfactory evidence of unsuccessful search for the newspapers in which the statement is alleged to have been published, the rejection of testimony of an agent of the company, that a copy of such a statement which he had in his own office was on file in the office of the treasurer of the Commonwealth, though offered solely as evidence of the contents of the statement which the agent testified to have been in his office, and in connection with his testimony that such a statement was published, is no ground of exception.

ACTION OF CONTRACT by a mutual fire insurance company established by the laws of New York at Granville in Washington county in that state, to recover assessments upon a deposit note dated December 16th 1848, made to them by the defendant upon applying to them for insurance upon his house in Cummington in this commonwealth, by which note the defendant promised to pay the plaintiffs a certain sum " in such portions and at such time or times as the directors of said company may, agreeably to their act of incorporation and by-laws, require."

At the first term of the court of common pleas, the defendant filed an answer in which (besides other grounds of defence not material to the understanding of the case) " he says that said insurance company, if it exists, is a foreign corporation, and that they have not complied with the acts of the State of Massachusetts in relation to such companies, and have no right to sue or bring said action within this commonwealth, and the defendant is not liable."

The case was referred to an auditor, the material part of whose report was as follows : The note in suit, and the defend-- ant's application for insurance, were in the handwriting of Albert S. Gillett, who was an agent of the plaintiffs, and who, on the 24th of June 1848, had filed in the office of the treasurer of this commonwealth a certificate that he had been regularly appointed an agent of the plaintiffs, and was duly authorized to take applications for insurance in their company. There was no evidence that Gillett ever took in this commonwealth any other application to the plaintiffs for insurance. The plaintiffs never filed in the office of said treasurer any such statement as is required by the Rev. Sts. *c.* 37, nor published in any newspaper any statement of their affairs. Henry A. Bridgman, another agent of the plaintiffs, called as a witness by them to prove a demand upon the defendant for these assessments, tes- tified that he called upon the defendant at his house in Cummington for payment thereof, which the defendant refused, saying that the plaintiffs' agent came there, and induced him to obtain the insurance by representing that it would be very cheap, and that he was disappointed in the assessments.

The defendant contended, before the auditor, that the plain- tiffs' contract of insurance with the defendant was void, because the plaintiffs had not complied with the provisions of the Rev. Sts. *c.* 37, § 40 *& seq.* and *St.* 1847, *c.* 273. The plaintiffs objected that this ground of defence was not open to the defend- ant, because not set forth in the answer. And they objected to the testimony of Bridgman to what the defendant said, on the same ground ; and also because it was of a declaration of the defendant in his own favor, and which had been introduced

32 *

inadvertently, without their call, and contrary to their intention. The defendant contended that the statement was competent, be. cause part of a conversation testified to by the plaintiffs' witness.

Upon this evidence the plaintiffs contended that the contract of insurance was made in the State of New York, and that there was no evidence sufficient in law that Gillett had an established agency in this state. The auditor reported that, if that part of Bridgman's testimony was admissible, it was proved that Gillett took the note and application in this state, from the defendant residing in this state, and delivered or transmitted them to the plaintiffs at their office in Granville, N. Y., where the application was approved and indorsed by the plaintiffs' officers, and the policy issued thereon; and reported the above facts to the court for their decision of the· questions of law arising thereon.

After the return of the auditor's report, the plaintiffs moved for leave to file the following amended answer: " The defendant says that one Gillett was the agent of the plaintiffs to procure insurance in the State of Massachusetts, and that said Gillett, at the residence of the defendant in Cummington in this county, procured insurance to be effected by the plaintiffs for the defendant at his residence aforesaid, and, having received proposals for insurance here of the defendant in this state, delivered or transmitted the same to the office of the company in New York. And the defendant further says that no statement, such as is required by the thirty-seventh chapter of the revised statutes, or the statute of 1847, chapter 273, or any statute whatever, was ever published in any newspaper printed in the State of Massachusetts."

This motion was allowed by the court, upon terms, namely, that the defendant should pay to the plaintiffs a double term fee. These terms were not complied with, but no objection on that account was made in the court of common pleas.

At the trial in that court, the only evidence offered by the plaintiffs was the auditor's report. The defendant offered no evidence; but contended that, upon the questions of law arising upon that report, he was entitled to judgment in his favor. But

*Briggs*, J., for the purposes of the trial, ruled all those questions in favor of the plaintiffs, and instructed the jury that all the evidence admitted by the auditor was competent, and directed a verdict for the plaintiffs, which was returned, and the defendant alleged exceptions.

*R. A. Chapman*, for the defendant, relied on the omission of the plaintiffs to comply with the Rev. Sts. *c.* 37, § 41, and *St.* 1847, *c.* 273.

*W. G. Bates & W. Allen, Jr.* for the plaintiffs, argued that such noncompliance could not defeat this action. (1). Because it was not open under the original answer, on which the cause was tried before the auditor. (2.) Because the amended answer could not avail the defendant, without payment of the terms imposed by the court for the amendment. (3.) Because the declarations of the defendant to Bridgman (upon which the auditor founded his conclusion that the contract with the defendant was made in this state) were not admissible in evidence in the defendant's favor. (4.) Because the provisions of the statutes relied on were intended to apply only where there was an established agency, and not to prohibit the taking of a single application. (5.) Because those statutes did not apply to the case of a mutual insurance company, having no capital or reserve. *Williams* v. *Cheney*, 3 Gray, 221. *Atlantic Mutual Fire Ins. Co.* v. *Concklin, ante*, 75.

DEWEY, J. That a noncompliance with the Rev. Sts. *c.* 37, and *St.* 1847, *c.* 273, if open to the defendant, is fatal to the maintenance of an action in favor of a foreign insurance company to enforce the collection of a deposit note, is well settled. *Williams* v. *Cheney*, 3 Gray, 215. *Jones* v. *Smith*, 3 Gray, 500.

A preliminary question is raised in this case, as to the right of the defendant, under his answer, to make this a substantive ground of defence. The answer originally filed having been objected to, at the hearing before the auditor, as insufficient to open this defence, the defendant, upon the return of the auditor's report, and before the trial, moved for and obtained leave to amend his answer. Whether the original answer was too general in its terms, we have not found it necessary to decide, as

we are of opinion that, upon the facts stated in the case, we must at this hearing assume the amended answer to have been made a part of the pleadings in the case.

It is true that the amendment was allowed upon the terms of payment of a double term fee, and it was quite competent for the plaintiff to have insisted upon the actual payment of the same before proceeding to trial, and thus have prevented the allowance of the amendment without the actual performance of this condition. But in practice we know very well that terms of this kind are often waived, or left for future adjustment upon the final termination of the suit, so that the fact of proceeding in the defence without actual payment of the money required as the condition of the amendment is not to be considered as an abandonment of the amendment. To produce that result, it would better accord with the usual course of practice, for the opposite party to insist upon the performance of the condition, and to give notice that he insisted on the payment of the costs, as required by the order of the court, allowing the amendment. But if nothing further is said or done, and the trial proceeds, as it would have under the amendment, we think it is too late, at the hearing on a bill of exceptions as to other rulings, to insist that the terms of the amendment were not at the moment literally complied with; and that, for this cause, the questions arising on the trial are to be considered as though the proposed amendment had not been allowed.

This defence being thus open to the defendant, the next inquiry is as to the facts in relation to this point. Gillett's agency in this commonwealth is fully shown by the certificate filed with the treasurer of the Commonwealth, agreeably to the requisition of our statutes. That the application was made through this agency appears from the fact, that the application and note are in the handwriting of Gillett, and is confirmed by the evidence of Bridgman, as to the demand upon the defendant for payment of assessments, and his reply thereto; that evidence being put in by the plaintiffs, and thus rendered competent.

We think that there was evidence in the case which would

warrant the auditor, or a jury, in finding the fact that the application for this policy was made in this commonwealth, and through a known and recognized agent, acting here on behalf of the plaintiffs.

This brings us to the inquiry, how far the statutes referred to are applicable to mutual insurance companies. No doubt the provisions of the Rev. Sts. *c.* 37, § 41, are to some extent inapplicable to such companies. They are so with regard to filing a statement of the amount of the capital stock, where the company have no other capital than that derived from premiums and premium notes.

But the *St.* of 1847, *c.* 273, § 3, distinctly recognizes other duties as devolving upon foreign mutual insurance companies, in reference to their agencies here ; and prohibits the making of insurance within this state by any mutual insurance company incorporated elsewhere, " unless the provisions in said thirty-seventh chapter, so far as they are applicable, shall have been duly complied with ;". and then provides, that " the statement to be filed in conformity thereto shall show, in addition to the amount of capital or reserve held by such company, the whole amount of risks insured by the same, the whole amount of premium thereon, what portion of it has been paid in cash, what security has been taken for the remainder, and what is the largest sum insured in any one risk."

It will be seen that the provisions of the Rev. Sts. *c.* 37, so far as they are applicable, are directly required of foreign mutual insurance companies. In § 40 of that chapter is found the requirement that every agent of such corporation " shall deposit with the treasurer of this state a copy of the charter of such foreign corporation, and a copy of the power of attorney given to him by the corporation ;" and in § 41, is the requirement as to filing with the treasurer of the Commonwealth a statement signed and sworn to by a majority of the directors of the corporation, specifying the amount of capital, and the manner of investment; " and the agent shall publish said statement in some newspaper printed in the county wherein he transacts the business of his agency "

Now the change introduced by the *St.* of 1847, *c.* 273, was that necessarily resulting from the character of a mutual insurance company, established without any stock capital, and having no other resources than the small sums paid in cash, and the premium notes taken of the members upon issuing their policies to them.   Hence the *St.* of 1847, *c.* 273, had, as a substitute for the statements required of stock companies, made the provisions above particularly stated.   This seems to have been all the change intended, leaving the other provisions, as to depositing with the treasurer of this state, a copy of the charter, a copy of the power of attorney, and publishing the statement in some newspaper printed in the county wherein he transacts the business of his agency, as required by Rev. Sts. *c.* 37, in full force.

We can perceive no reason for any distinction as to publishing such statements in a newspaper, in the one case and not in the other.   They alike bear upon the ability of the company to make good their insurance in case of loss.   Those required of mutual insurance companies particularly disclose the extent of their liabilities, and the means they have to meet losses.   The information furnished by the statements required to be filed with the treasurer of the Commonwealth is such as should be brought before the public in the form required, and its benefit must in a great measure be lost, if it is to be permitted to remain unknown save by those who may search therefor in the files of a public office.

In the opinion of the court, the statutes of this commonwealth do require such publication in a newspaper of the statements required of the company to be filed with the treasurer of the State, before the agent shall exercise any acts of agency in procuring an insurance in this state.

If this case had arisen solely under the Rev. Sts. *c.* 37, it might have been necessary to consider whether it came within its provisions; the policy itself having been made and forwarded from the State of New York.   But that inquiry is under the *St.* of 1847, *c.* 273, rendered quite immaterial; § 1 of this statute having directly applied the provisions of Rev. Sts. *c.* 37, to " every person who shall so far represent any corporation, established in

any other state, as to receive or transmit proposals for insurance, or to receive for delivery policies founded on proposals forwarded from this state, or otherwise to procure insurance to be effected by such corporation, for persons residing in this state." This statute renders illegal an agency to receive or transmit proposals for insurance by a foreign corporation, without first having complied with the requisitions of our statutes. This transaction was of that character, and was therefore illegal, and deprives the plaintiffs of the right of the aid of a court of law to enforce the same.

The result is therefore that, upon the facts as found by th auditor, the plaintiffs were not entitled to a verdict.

*New trial ordered.*

A trial was had before *Dewey*, J., at which the plaintiffs introduced an authenticated copy of the statement of their condition on the 1st of January 1848, sworn to by their directors and filed by them in the office of the treasurer of the Commonwealth on the first Monday of January 1848; and after proof of a search for newspapers, and of their loss, were permitted to put in parol evidence to prove the publication required by the Rev. Sts. *c.* 37, § 41, and *St.* 1847, *c.* 273; and for that purpose, introduced the deposition of Gillett, which contained the following interrogatory and answer:

" Had you or not before the taking of said application or before December 16th 1848, at your agency in Chicopee or elsewhere, a copy or copies of a statement showing the condition of the plaintiff company on the first day of January 1848, signed and sworn to by the directors of said company? And was or not a copy of said statement and affidavit on file in the office of the treasurer of the Commonwealth of Massachusetts? Please annex a copy, if still in your possession or control; and if not, state when and how you lost or parted with the possession of the same, as nearly as you can recollect." *Answer.* " I had, prior to the taking of said application, in Chicopee, at my agency, a copy of said statement mentioned in said interrogatory, signed and sworn to by the directors of said company. [A copy of

said statement and affidavit was on file in the office of the treasurer of the Commonwealth of Massachusetts.] I have no copy. I do not know where or how I parted with the same; but suppose I left them with other papers at Chicopee."

The defendant objected to this interrogatory and answer. The plaintiffs stated " that they did not offer that part of the answer, which referred to the statement on file in the treasurer's office, as evidence of compliance with the law in that particular; but solely as evidence of the contents of the statement testified by Gillett to be in his office, by reference to the copy from the treasurer's office already in evidence; and that the whole was offered solely as introductory to and in connection with the sixth interrogatory and the answer thereto," in which Gillett testified that he was quite positive that a copy of said statement and affidavit was published in a newspaper in Hampden county prior to the taking of this application. The judge excluded so much of the answer as is above enclosed in brackets.

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions, which were argued by the same counsel at September term 1858.

SHAW, C. J. The evidence was rightly rejected. The object was to prove the contents of the paper which the witness testified to having published. The best mode of proving it would be a copy, identified by the witness, of the same paper. The paper filed in the treasurer's office not having been seen by the witness, he could not testify that that paper, according to his recollection, conformed to the one of which the contents were to be proved, and therefore, for the purpose for which it was offered as secondary evidence, it was not competent. The testimony of Gillett, to the fact that a copy of the statement was on file in the treasurer's office, afforded no other means of inferring the contents of the statement which Gillett had testified to be in his own office, than the jury had before them already in the authenticated copy from the treasurer's office.

*Exceptions overruled.*